## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **LUCY KIMBERLY FORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:22-cv-02346-TLP-atc** |
| | ) | |
| **MEMPHIS-SHELBY COUNTY** | ) | |
| **SCHOOLS A.K.A. SHELBY COUNTY** | ) | |
| **BOARD OF EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS

Before the Court by order of reference[1] is Defendant Memphis-Shelby County Schools ("MSCS") A.K.A. Shelby County Board of Education's Motion to Dismiss, filed June 28, 2022. (ECF No. 9.) *Pro se* Plaintiff Lucy Kimberly Ford filed her response on July 5, 2022. (ECF No. 10.) MSCS filed its reply on July 18, 2022. (ECF No. 12.) For the following reasons, it is recommended that the motion be DENIED.

## PROPOSED FINDINGS OF FACT

Ford submitted a form-filled complaint on June 6, 2022, alleging employment discrimination against MSCS pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.[2] (ECF No. 1.) She alleges MSCS engaged in acts of retaliation against her as well as acts of sexual discrimination in the form of sexual harassment. (*Id.* at 4.) She

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

[2] The facts herein are gleaned from Ford's complaint, are accepted as true, and are construed in a light most favorable to Ford. *See* Fed. R. Civ. P. 12(b)(6).

asserts that MSCS "engaged in unlawful employment practices" in violation of Title VII by discriminating against her in several ways "for making Sexual Harassment charges, testifying, assisting, and participating in enforcement proceedings." (*Id.* at 7–9.)

Ford describes the incidents giving rise to her claims in the charge-of-discrimination form she filed with the U.S. Equal Employment Opportunity Commission (the "EEOC") on July 28, 2021. (ECF No. 1-1, at 3–4.)[3] She alleges that MSCS hired her as a teacher in August 2016. (*Id.* at 3.) On August 21, 2019, "Mr. Paxton, [a] Music Teacher, made an unwelcomed sexual advancement towards [her] in front of [her] students." (*Id.*) She filed a complaint with school principal Parchera James, human resources, and her union, requesting that Paxton have no further contact with her. (*Id.*) During the 2019–20 school year, Ford also requested a reasonable accommodation for her disability—which was not described in the charging document—but James denied that request. (*Id.*)

For the 2020–21 school year James assigned Paxton as Ford's music teacher, causing Ford emotional stress and creating what she describes as a hostile work environment. (*Id.*) Though she filed another complaint after this assignment, no action was taken. (*Id.*) In May 2021, Ford told another teacher that she was interested in a training program. (*Id.*) The same

---

[3] Ford attached the charging document to her complaint. The Court "may take judicial notice of the EEOC charging documents appended to [the Complaint] without converting the present motion into a motion for summary judgment because these documents are a matter of public record." *Campbell v. AdhereHealth, LLC*, No. 3:19-CV-00730, 2020 WL 5702471, at *1 n.2 (M.D. Tenn. Sept. 23, 2020) (quoting *Williams v. Steak 'N Shake*, No. 5:11CV833, 2011 WL 3627165, at *3 (N.D. Ohio Aug. 17, 2011)); *Whitehead v. Sterling Jewelers, Inc.*, No. 2:21-cv-02525-JTF-tmp, 2023 WL 25736, at *2 (W.D. Tenn. Jan. 3, 2023) ("'EEOC charges and related documents like right-to-sue letters qualify as public records' that the Court may take judicial notice of and consider when deciding a motion to dismiss or motion for judgment on the pleadings.") (quoting *Simpson v. G4S Secure Sol. (USA), Inc.*, No. 12-2875-STA-tmp, 2013 WL 2014493, at *3 (W.D. Tenn. May 13, 2013)).

month, James told her she was no longer a lead teacher and did not select her for training, without explaining either decision. (*Id.*)

In her complaint, Ford alleges that MSCS violated Title VII in multiple ways.[4]  First, she asserts that MSCS misled her and the "Memphis Shelby County Association (M-SECA) that Plaintiff's Sexual Harassment complaint had been investigated, thereby failing to enforce Local, State and Federal policies," consistent with its lawful responsibilities.  (ECF No. 1, at 7.)  Next, she asserts that MSCS "failed to exercise reasonable care to prevent and promptly correct the unlawful conduct of its Agents and Supervisory employee's discriminatory and retaliatory behavior of creating a hostile work environment" and "forced her to work with the co-worker who committed the original Sexual Harassment violation against" her.  (*Id.*)  She also alleges that MSCS wrongfully downgraded her performance reports, denied her professional development and training opportunities, and denied her an opportunity to teach during the summer.  (*Id.* at 8.)  Finally, she asserts that MSCS acted unlawfully when it failed to correct its agents and supervisors when they conspired to deprive her "of protections afforded by the U.S. Equal Employment Opportunity Commission, OSHA Safety Protocols for Workplace, and [failed] to follow guidelines for COVID-19 Contract Tracing and quarantined," as "required under the SCS and CDC Public School Re-Entry protocol(s)."  (*Id.* at 9.)  Ford lists several dates on which she alleges the discriminatory acts took place: in August and October 2019, two times in April 2021, in May and October 2021, and in May 2022.  (*Id.* at 4.)

_____

[4] Ford also asserts that MSCS's actions violated the Tennessee Human Rights Act ("THRA"), Tennessee Code Annotated §§ 4-21-101, *et seq.*  (ECF No. 1, at 3.)  Although Ford asserted in her EEOC charging document that she was denied a reasonable request for an accommodation of her disability and checked the box for discrimination based on disability (ECF No. 1-1, at 3), her complaint does not assert a claim under the Americans with Disabilities Act of 1990, and she offers no allegations in her complaint that would support such a claim.

On March 28, 2022, the EEOC issued Ford a determination and notice of rights letter. (ECF No. 1-1.)  The EEOC informed Ford that it would "not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute."  (*Id.* at 1.)  It informed Ford that her right to sue would be lost if she did not file a lawsuit within ninety days of her receipt of the letter.  (*Id.*)

MSCS seeks to dismiss Ford's complaint on multiple grounds.  First, it asserts that Ford's claims are either partially or completely time-barred under both Title VII and the THRA.  (ECF No. 9-1, at 2.)  Next, it asserts that Ford has failed to plead the elements of a sex discrimination claim, including that one of her similarly situated colleagues was treated differently than she was.  (*Id.*)  Finally, MSCS contends that Ford's retaliation claim is so sparsely pled that it cannot be said to put MSCS on notice of the basis of her claim.  (*Id.*)

## PROPOSED CONCLUSIONS OF LAW

### I.    Standard of Review for Failure to State a Claim

To determine whether Plaintiff's complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  The Court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).  Pleadings provide facial plausibility when they present "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not
entitled to the assumption of truth. While legal conclusions can provide the framework of a
complaint, they must be supported by factual allegations." *Id.* at 679; *see also Twombly*, 550
U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of
entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a
claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the
claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards
than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir.
2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also Vandiver v. Vasbinder*, 416
F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se*
complaints, "however inartfully pleaded"). Nevertheless, *pro se* litigants "are not exempt from
the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*,
783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372,
376 (6th Cir. 2006)); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)
("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf
of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the
courts from neutral arbiters of disputes into advocates for a particular party. While courts are
properly charged with protecting the rights of all who come before it, that responsibility does not
encompass advising litigants as to what legal theories they should pursue."); *Brown v.
Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a

plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*,
518 F.2d 1167, 1169 (6th Cir. 1975)).

## II.    The Timeliness of Ford's Claims Under Title VII and the THRA

MSCS asserts that the unwelcome sexual advancement Ford alleges in her complaint took

place on August 21, 2019, but she did not file her charge of discrimination with the EEOC until

July 28, 2021, more than 700 days later, rendering her Title VII claim untimely as to that claim.

(ECF No. 9-1, at 4–5.)  In fact, MSCS asserts that "any Title VII claims based on alleged

incidents occurring prior to October 1, 2020 (300 days prior to Ms. Ford filing her EEOC

Charge) . . . are time-barred and must be dismissed."  (*Id.* at 5.)  Ford appears to confront these

arguments by referencing "her compliance with timelines requirements mandated in the

Defendant's human resources harassment policy governing sex discrimination complaints."

(ECF No. 10, at 2.)

"Before a plaintiff alleging discrimination under Title VII can bring suit in federal court,

she must satisfy two administrative prerequisites: '(1) by filing timely charges of employment

discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notices

of the right to sue.'"  *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (quoting

*Puckett v. Tenn. Eastman Co.,* 889 F.2d 1481, 1486 (6th Cir. 1989)).  "The statute requires that

an aggrieved individual file a charge with the Equal Employment Opportunity Commission . . .

within 300 days 'after the alleged unlawful employment practice occurred,' if she 'initially

instituted proceedings with a State or local agency' qualified to provide relief."  *Hollingsworth v.*

*Henry Cnty. Med. Ctr. EMS, Inc.*, No. 2:05-cv-01272, 2007 WL 1695303, at *2 (W.D. Tenn.

June 12, 2007) (quoting 42 U.S.C. § 2000e-5(e)(1)).  "The Sixth Circuit has labeled this

provision as containing 'a dual statute of limitations,' with a 300-day limit for 'deferral state[s]'

and a 180-day limit for all other states." *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 799 (E.D. Tenn. 2016), *aff'd*, 899 F.3d 428 (6th Cir. 2018) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001)).  Tennessee is a deferral state, and therefore "the statute of limitations for filing an employment discrimination charge with the EEOC or the [Tennessee Human Rights Commission] is 300 days after the alleged unlawful employment action occurred." *Id.* at 799 (quoting *Holleman v. BellSouth Telecomms., Inc.*, No. 3:09-CV-311, 2011 WL 3876590, at *7 (E.D. Tenn. Sept. 1, 2011)).  Nevertheless, "[i]f a charge is not first filed with the [Tennessee Human Rights Commission], or dual-filed with the EEOC and the [Tennessee Human Rights Commission] contemporaneously, . . . then the 180-day limit applies." *Id.* (citing *El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 463 (6th Cir. 2006)).

Here, there is no dispute that Ford filed her charge with the EEOC on July 28, 2021.  (*See* ECF No. 1-1, at 3–4.)  Thus, MSCS is correct that any Title VII claims arising from incidents occurring prior to October 1, 2020, i.e., 300 days prior to the filing of the EEOC Charge, could be time-barred.  But Ford does not appear to be pursuing a discrete claim of sexual harassment based on the 2019 incident.

Instead, Ford appears to assert three different types of Title VII claims: sex discrimination, hostile work environment, and retaliation.  Her claims for sex discrimination and retaliation are based on her allegations of MSCS denying her admission to apprenticeship or other training programs, downgrading her performance evaluations without explanation, denying her summer teaching opportunities, and removing her from her role as lead teacher, all of which appear to have taken place after October 1, 2020, within the permissible 300 days of Ford filing her EEOC Charge.  Those claims are not time barred.

The older conduct comes into play in Ford's Title VII hostile work environment claim. The Supreme Court has drawn a distinction between hostile work environment claims and discrete discriminatory acts that can constitute unlawful employment practices, such as "termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* As to the timeliness of hostile work environment claims, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. Ultimately, then, "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118.

Although Ford alleges that the initial harassing incident took place on August 21, 2019, she asserts that the harassment persisted through the 2020–21 school year. (ECF No. 1-1, at 3.) She has therefore alleged a hostile work environment that includes conduct occurring within the statutory period, and so the entire period of the alleged hostile work environment may be considered, including the 2019 incident.

This statute of limitations analysis is equally applicable to Ford's claims under the THRA. The THRA, similar to Title VII, makes it a "discriminatory practice for an employer to: (1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. § 4-21-401(a). A claim under the THRA "shall be filed . . . within one (1) year after the alleged discriminatory practice *ceases*." Tenn. Code Ann. § 4-21-311(d) (emphasis added). The "one

year limitations period for bringing a direct court action is not tolled while administrative

charges are pending with the THRC or the EEOC." *Martin v. Boeing-Oak Ridge Co.*, 244 F.

Supp. 2d 863, 871 (E.D. Tenn. 2002) (quoting *Burnett v. Tyco Corp.*, 932 F. Supp. 1039, 1044

(W.D. Tenn. 1996)).

However, under the THRA, like under Title VII, "a hostile work environment claim may

be timely when only a single act that contributes to the hostile environment occurs within

the limitations period." *McCain v. Saint Thomas Med. Partners*, No. M202000880COAR3CV,

2021 WL 2156912, at *5 (Tenn. Ct. App. May 27, 2021). Ford's June 6, 2022 complaint is

therefore timely because she alleges that the hostile work environment persisted through the

2020–21 school year and alludes to discriminatory acts that occurred beyond that, in October

2021 and May 2022. (ECF No. 1, at 4.) Though Ford lists those most recent two dates in her

complaint, she does not appear to include any factual allegations as to what occurred on those

dates. It is therefore recommended that Ford be ordered to amend her complaint to include

details supporting those allegations, as well as any additional allegations related to any ongoing

violations.

In summary, Ford's sex discrimination and retaliation claims, which are based on conduct

occurring after October 1, 2020, are timely. Her hostile work environment claim, which alleges

conduct continuing past October 1, 2020, is also timely. Her THRA claim is timely as well,

provided Ford is able to assert facts to support her allegations of conduct occurring after June 6,

2021.

## III.    Whether Ford Pleads the Elements of a Title VII Claim for Discrimination

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for

an employer . . . to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Blackburn v. Shelby Cnty.*, 770 F. Supp. 2d 896, 918 (W.D. Tenn. 2011) (quoting 42 U.S.C. § 2000e–2(a)(1)).  Importantly, a Title VII plaintiff need not plead all elements of her claims to survive Rule 12(b)(6) scrutiny.  Instead, she must satisfy only the plausibility standard articulated in *Iqbal*.  *See Holland v. LG Elecs. U.S.A., Inc.*, No. 3:20-CV-00706, 2021 WL 130529, at *6 (M.D. Tenn. Jan. 14, 2021); *see also Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (reaffirming, following *Twombly* and *Iqbal*, the Supreme Court's holding in *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), "that the prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement").

Here, MSCS asserts that, even if some elements of Ford's claims under Title VII were timely asserted, dismissal is nevertheless warranted because she "fails to allege sufficient facts to establish a plausible claim for sex discrimination."  (ECF No. 9-1, at 5.)  "In order to establish a prima facie claim of sex discrimination, Plaintiff must offer evidence showing that (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside the class or that a 'comparable non-protected person was treated better.'" *Blackburn*, 770 F. Supp. 2d at 918–19 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992)).  MSCS asserts that Ford has failed to plead any facts that relate to the third or fourth elements.

MSCS asks too much at this stage of the proceedings, however.  MSCS appears to acknowledge that Ford has sufficiently pled that she was subjected to an adverse employment action, in that she was not selected for a training program in May 2021 and was also told that month by the school's principal that she "was no longer a lead teacher."  (ECF No. 1-1, at 3.) According to MSCS, Ford "does not allege she was eligible or qualified for the training or the

lead teacher position, and she does not allege that a less qualified male was selected for either."
(ECF No. 9-1, at 7.)  However, implicit in Ford's allegations is that she was, in fact, a lead
teacher up until May 5, 2021, the day she was told she would no longer have the position.
Requiring Ford to allege that she was qualified for a position she previously filled and was
removed from with no explanation would be to prioritize form over substance.  Such is not
required to put MSCS on notice of her claim.  MSCS is correct that Ford has not alleged that a
less qualified male was selected either for the training or for the position of lead teacher.
However, Ford is not required to plead every element of her claim at this stage of the
proceedings.

What is more, by cabining Ford's claim to one for sex discrimination under Title VII,
MSCS ignores Ford's statement of a plausible claim for a hostile work environment based on sex
under Title VII.[5]  "Under Title VII, to establish a prima facie hostile-work-environment claim, [a
plaintiff] must show: '(1) she was a member of a protected class; (2) she was subjected to
unwelcomed harassment; (3) the harassment was based on sex[ ]; (4) the harassment created a
hostile work environment; and (5) employer liability.'"  *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d
400, 411 (6th Cir. 2021) (quoting *Ladd v. Grand Trunk Western R.R.*, 552 F.3d 495, 500 (6th
Cir. 2009)).  "A hostile work environment exists when 'the workplace is permeated with
discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the
conditions of the victim's employment and create an abusive working environment.'"  *Keister v.
Amazon.com, Inc.*, No. 3:20-CV-0990, 2021 WL 2838498, at *4 (M.D. Tenn. May 25, 2021),

---

[5] MSCS fails to address Ford's hostile work environment claim under Title VII yet
acknowledges that "[t]he THRA also applies to 'claims of discrimination based on the existence
of a hostile work environment.'  (ECF No. 9-1, at 9 (quoting *Phelps v. State*, 634 S.W.3d 721,
727 (Tenn. Ct. App. 2021)).)

*report and recommendation adopted*, 2021 WL 2834696 (M.D. Tenn. July 7, 2021) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "The environment must not only be objectively hostile but also one that a reasonable person would find hostile or abusive."  *Id.* (quoting *Harris* 510 U.S. at 21–22).

Ford's allegations of a hostile work environment are sparse beyond the August 2019 incident, but her complaint and EEOC Charge repeatedly refer to the hostile work environment she was subjected to, particularly after Paxton was assigned as her music teacher for the 2020–21 school year.  (ECF No. 1, at 7; No. 1-1, at 3.)  She asserts that her "workplace was permeated with discriminating intimidation and insult, sufficiently severe and pervasive . . . and emotional trauma from being forced to work with the co-worker who committed the original Sexual Harassment violation against [her], who committed additional offensive acts of aggression toward [her]."  (ECF No. 1, at 7.)  Given these allegations, Ford has sufficiently alleged a plausible claim for relief for a Title VII hostile work environment based on sex.

## IV.    Whether Ford States a Title VII Claim for Retaliation

"To make a prima facie showing of Title VII retaliation, an employee must show '(1) he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.'"  *Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th Cir. 2015) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)).  "Employees engage in 'protected activity' when they oppose practices 'made unlawful under Title VII.'"  *Young v. Bernhard MCC, LLC*, No. 3:20-CV-00363, 2022 WL 1499700, at *3 (M.D. Tenn. May 12, 2022) (quoting *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 373 (6th Cir. 2013); 42 U.S.C. § 2000e-3).  So

"'complaining about discriminatory treatment' is a protected activity, and an employer may not retaliate against an employee for making such complaints." *Id.* (citing *Eades v. Brookdale Senior Living, Inc.*, 401 F. App'x 8, 10 (6th Cir. 2010)).  Importantly, "[t]he language of the 'opposition' clause of Title VII's anti-retaliation provision states that 'it shall be an unlawful employment practice for an employer to discriminate against any . . . employee[ ] . . . because [the employee] opposed any practice made an unlawful employment practice.'" *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) (quoting 42 U.S.C. § 2000e–3(a)).

MSCS argues that Ford "makes virtually no relevant factual allegations in her Complaint" related to her retaliation, and "[h]er conclusory allegations are far too vague to put the School Board on notice of the basis for her claim for retaliation."  (ECF No. 9-1, at 7.) MSCS further asserts that, "[a]ssuming Ms. Ford intends to allege that the School Board engaged in retaliatory conduct in response to her filing a charge for discrimination with the EEOC in July 2021, her retaliation claim must be dismissed because she failed to exhaust her administrative remedies."  (*Id.*)

To the extent Ford's retaliation claim is based upon actions taken in response to the filing of her EEOC Charge in July 2021, MSCS asserts those claims have not been exhausted. "However, '[r]etaliation claims are typically excepted from the [exhaustion] requirement because they usually arise after the EEOC charge is filed.'"  *Arteaga v. Cinram-Technicolor*, No. 3:19-CV-00349, 2020 WL 433990, at *6 (M.D. Tenn. Jan. 28, 2020), *report and recommendation adopted*, No. 3:19-CV-00349, 2020 WL 1905176 (M.D. Tenn. Apr. 17, 2020) (quoting *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 n.3 (6th Cir. 2010)).  "Exempting retaliation claims based on the filing of an EEOC charge from the exhaustion requirement 'promotes efficiency by

13

requiring only one filing.'" *Id.* (quoting *Ayala v. Summit Constructors, Inc.*, 788 F. Supp. 2d 703, 718 (M.D. Tenn. 2011)).

Even still, Ford also asserted that MSCS took retaliatory actions against her before she filed her EEOC Charge. In fact, in the EEOC Charge itself Ford checked the box for discrimination based on retaliation. (ECF No. 1-1, at 3.) The EEOC Charge then details how she complained of Paxton's August 21, 2019 behaviors to the school principal, human resources, and her union. (*Id.*) After Paxton was assigned as Ford's music teacher for the 2020–21 school year, subjecting her to additional harassment, she complained again. (*Id.*) Those complaints constitute protected activity. *See New Breed Logistics*, 783 F. 3d at 1068 (explaining that "[s]exual harassment is without question an 'unlawful employment practice,'" and "[i]f an employee demands that his/her supervisor stop engaging in this unlawful practice—i.e., resists or confronts the supervisor's unlawful harassment—the opposition clause's broad language confers protection to this conduct."). Ford alleges that, after she made those complaints, MSCS took adverse employment actions against her, including demoting her from her position as lead teacher, not selecting her for training, downgrading her performance reports, denying her professional development and training opportunities, and denying her an opportunity to teach during the summer. (ECF No. 1, at 8; No. 1-1, at 3.)

In short, although Ford is not required to allege all elements of a prima facie claim for retaliation under Title VII at this stage of the proceedings, she has sufficiently done so in her complaint.

14

## <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that MSCS's Motion to Dismiss be

DENIED and that Ford be ordered to amend her complaint to provide factual support for her

allegations of discriminatory acts on October 18, 2021, and May 6, 2022.

RESPECTFULLY SUBMITTED this 21st day of January, 2023.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

### **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation
disposition, a party may serve and file written objections to the proposed findings and
recommendations. A party may respond to another party's objections within fourteen (14)
days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within
fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.