**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| LUCY KIMBERLY FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:22-cv-02346-TLP-atc |
| v. | ) | |
| | ) | JURY DEMAND |
| MEMPHIS-SHELBY COUNTY | ) | |
| SCHOOLS, a/k/a Shelby County Board of | ) | |
| Education, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION AND
GRANTING MOTION FOR SUMMARY JUDGMENT**

Pro se Plaintiff Lucy Ford sued Defendant Memphis-Shelby County Schools, a/k/a Shelby County Board of Education ("SCBE") under Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act for sex discrimination, sexual harassment, and retaliation. (ECF No. 1.)  Defendant moved for summary judgment seeking dismissal of all claims.  (ECF No. 29.)  Plaintiff responded (ECF No. 32), and Defendant replied (ECF No. 36).  Magistrate Judge Annie T. Christoff entered a Report and Recommendation ("R&R") recommending that the Court (1) grant Defendant's motion in part by dismissing Plaintiff's discrete discrimination claims and hostile work environment claims, and (2) deny it in part by allowing Plaintiff's retaliation claims about her removal from the second grade team lead position continue to trial. (ECF No. 38.)

For the reasons below, the Court **PARTIALLY ADOPTS** the R&R but also finds that summary judgment should be granted in full.  The Court therefore **DISMISSES** Plaintiff's Complaint **WITH PREJUDICE**.

## BACKGROUND AND THE R&R

Plaintiff began working as a second grade teacher at Highland Oaks Elementary School during the 2018–19 school year.[1]  (ECF No. 35 at PageID 307.)  After complaining to administration about several incidents involving a school music teacher, Christopher Paxton; staff members' failure to follow COVID-19 protocol; her exclusion from a summer reading program and summer learning academy; her removal from the team lead position; and other issues, Plaintiff sued here in June 2022.[2]  (*See* ECF No. 38 at PageID 352–58.)

Defendant moved to dismiss for failure to state a claim in June 2022.  (ECF No. 9.)  Judge Christoff entered an R&R on the Motion to Dismiss in January 2023, recommending that the Court deny the motion and order Plaintiff to file an amended complaint providing factual support for allegations of discriminatory acts on October 18, 2021, and May 6, 2022.  (*See* ECF No. 18)  Plaintiff amended her Complaint, (ECF No. 19), before the Court could act on the R&R.  So the Court adopted Judge Christoff's Report and Recommendation in part and denied Defendant's Motion to Dismiss in March 2023.  (ECF No. 22.)  In her Amended Complaint, Plaintiff alleges that Defendant discriminated against her based on her sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101–4-21-408 ("THRA").  (ECF No. 19 at PageID 82.)

---

[1] For a complete recitation of the facts, see Judge Christoff's R&R.  (ECF No. 38 at PageID 352–58.)

[2] Plaintiff administratively exhausted her claims by filing an EEOC charge of discrimination on July 28, 2021.  (ECF No. 1-1.)

Defendant now seeks summary judgment for many reasons.  First, Defendant asserts that Plaintiff's standalone claim for sexual harassment based on events from 2019 is time-barred. (ECF No. 29-1 at PageID 178.)  Next, it argues that Plaintiff cannot establish the elements of her hostile work environment claims.  (*Id.* at PageID 178–83.)  And finally, Defendant asserts that Plaintiff has failed to show any triable issues for her retaliation claim.  (*Id.* at PageID 179–91.) Plaintiff counters that genuine disputes of material fact exist in all three categories of claims she raised in the Amended Complaint, making summary judgment improper.  (*See* ECF No. 33.)

After recounting the factual and procedural history, (ECF No. 38 at PageID 350–58), Judge Christoff addressed whether Plaintiff's Title VII and THRA claims could survive summary judgment.  (*Id.* at PageID 360, 374.)  The Court will consider Judge Christoff's R&R on Defendant's Motion for Summary Judgment and the parties' objections to it below.  But first, the Court will cite the legal standard for this motion.

## LEGAL STANDARD

A court grants summary judgment only when it finds "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of fact exists when a reasonable factfinder could consider the evidence and return a verdict for the non-moving party.  *City of Memphis v. Horn Lake Creek Basin Interceptor Sewer Dist.*, No. 2:19-cv-02864-MSN-cgc, 2023 WL 3931510, at *7 (W.D. Tenn. Mar. 30, 2023).  A fact is material if "proof of that fact would establish or refute an essential element of the cause of action or defense."  *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)).  Courts must construe all reasonable inferences in favor of the nonmoving party when considering a

motion for summary judgment.  *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The moving party has the initial burden of meeting the Rule 56 standards.  *Bruederle*, 687 F.3d at 776 (citing *Martin v. Kelley*, 803 F.2d 236, 239 n. 4 (6th Cir. 1986)).  If the moving party meets this burden, then the nonmoving party must provide specific facts showing there is a genuine issue of material fact for trial.  *Id.*  A "mere scintilla of evidence" is not enough: "there must be evidence on which the jury could reasonably find" for the nonmoving party.  *Novak v. Metro Health Med. Ctr.*, 503 F.3d 572, 577 (6th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986)).  To satisfy their burdens of proof, "both parties are required to either cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Bruederle*, 687 F.3d at 776 (internal quotations and citations omitted).  The court may also consider other evidence in the record, but "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Anderson*, 477 U.S. at 255).

"These standards apply regardless of a party's pro se status"—the liberal pleading standard for pro se parties no longer applies at the summary judgment stage.  *Almasri v. Valero Ref. Co.– Tenn., LLC*, No. 2:20-cv-02863-SHL-tmp, 2022 WL 895732, at *3 (W.D. Tenn. Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 891842 (W.D. Tenn. Mar. 25, 2022) (citations omitted); *see also Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006)) ("Liberal treatment of pro se pleadings does not require lenient treatment of substantive law.").

In ruling on a motion for summary judgment then, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (internal quotations omitted).  If the nonmoving party "fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof," then the ruling court should grant summary judgment.  *Martinez*, 703 F.3d at 914 (quoting *Chapman v. United Auto Workers Loc. 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)).

Finally, a magistrate judge may submit to a district court judge proposed findings of fact and a recommended ruling on certain pretrial matters, including whether to dismiss a case on summary judgment.  28 U.S.C. § 636(b)(1)(A)–(B).  And "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  If the parties object, the district court reviews the objected-to portions of the R&R de novo.  Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).  And the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The district court need not articulate all its reasons for rejecting a party's objection.  *Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986).

A party who objects must do so with enough specificity "to enable the district court to discern those issues that are dispositive and contentious."[3]  *Miller v. Currie*, 50 F.3d 373, 380

---

[3] "A general objection that does not identify specific issues from the magistrate [judge]'s report . . . is not permitted because it renders the recommendations of the magistrate [judge] useless, duplicates the efforts of the magistrate [judge], and wastes judicial economy." *Hastings v. Shelby Cnty. Gov't*, No. 2:17-cv-02687-SHL-cgc, 2019 WL 3782198, at *1 (W.D. Tenn. Aug. 12, 2019) (citations omitted).

(6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).  And a party cannot raise new argument or issues that it did not present to the magistrate court without compelling reasons.  *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Judge Christoff entered her R&R in November 2023 and both parties have timely objected.  (*See* ECF Nos. 41, 42.)  The Court therefore reviews the R&R de novo.

## DISPOSITION

Having conducted a de novo review, the Court agrees with Judge Christoff's R&R in part and disagrees in part.  The Court finds that Defendant's Motion should be granted in full, and that Plaintiff's Amended Complaint should be dismissed with prejudice.  The Court will explain its reasoning below.

## I.    Plaintiff's Title VII Claims

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Judge Christoff's R&R determined that Plaintiff alleges three different Title VII claims: (1) sex discrimination; (2) hostile work environment; and (3) retaliation.  The Court will address each below.

### A.    Discrete Sex Discrimination

Judge Christoff's earlier R&R on Defendant's Motion to Dismiss determined that any claim of discrete sexual harassment occurring before October 1, 2020, would be time-barred. (ECF No. 18 at PageID 73).  And Plaintiff's Amended Complaint, does not clarify whether Plaintiff alleges any discrete claims of discrimination/harassment occurring before October 1, 2020.  (ECF No. 38 at PageID 360; *see* ECF No. 19.)  So Judge Christoff determined that if

Plaintiff is now alleging discrimination based on acts that occurred on August 21, 2019, and October 7, 2019,[4] then those claims are time-barred.  (*Id.* at PageID 361.)

The R&R also noted that it is still unclear whether Plaintiff alleges discrete discrimination claims based on acts occurring *after* October 1, 2020.  The R&R concluded that the other incidents Plaintiff identifies as "alleged discriminatory acts" seem to relate to her retaliation and hostile work environment claims.  (ECF No. 38 at PageID 361; ECF No. 19 at PageID 85–90.)  What is more, Plaintiff failed to show an essential element of a Title VII discrimination claim for these claims: that a similarly situated employee outside the protected class was treated more favorably than she was.  For these reasons, Judge Christoff recommended that Plaintiff's discrete discrimination claims be dismissed as time-barred or inadequately supported.  (ECF No. 38 at PageID 361.)

Plaintiff objects to Judge Christoff's findings, arguing that "Judge Christoff erroneously found that Ms. Ford has failed to allege or demonstrate that similarly situated non-protected employees were treated more favorably."  (ECF No. 41 at PageID 388.)  But Plaintiff still fails to identify any such employee or provide evidence of how they were treated more favorably.[5]  (*Id.*)

---

[4] The August 21, 2019, incident refers to Plaintiff's claim that Mr. Paxton "wolf-whistled" or "catcalled" at her as she walked away from his classroom.  (ECF No. 38 at PageID 352.)  As for the October 7, 2019, incident, Plaintiff alleges in her Amended Complaint, "On October 7, 2019, [Defendant] engaged in unlawful employment practices, in that, it discriminated against me for making Sexual Harassment charges on the basis of testifying, assisting, and participating in enforcement proceedings."  (ECF No. 19 at PageID 84.)  But the R&R determined that Plaintiff abandoned any discrimination claim arising from the October 7, 2019, event because she did not mention the event in her summary judgment response.  A plaintiff abandons a claim when she fails to argue it in her response to the defendant's motion for summary judgment, and the court need not consider the claim's merits. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x. 368, 372 (6th Cir. 2013) (citation omitted).  The Court therefore agrees with Judge Christoff that Plaintiff abandoned any claim about October 7, 2019.

[5] Plaintiff's Objection to Judge Christoff's R&R only includes caselaw for retaliation and hostile work environment claims under Title VII, and her argument is largely about those claims.  (*See* ECF No. 41 at PageID 387–90.)

7

And Plaintiff also fails to address Judge Christoff's finding that these claims must be dismissed as time-barred.

Having conducted a de novo review, the Court agrees with Judge Christoff and **ADOPTS** her recommendation on this point. The Court therefore **GRANTS** summary judgment to Defendant on Plaintiff's discrete sex discrimination claims.

### B.    Hostile Work Environment

A plaintiff making a hostile work environment claim stemming from a co-worker's actions must show that: (1) she was a member of a protected class; (2) she faced unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) the employer knew or should have known of the sexual harassment and failed to promptly act. *Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298, 307 (6th Cir. 2016) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). Judge Christoff's R&R found that Plaintiff failed to prove the fourth element, meaning her hostile work environment claim must fail. (ECF No. 38 at PageID 362.)

Courts "must examine the totality of the circumstances" when assessing whether alleged harassment created a hostile work environment. *Barrett*, 556 F.3d at 515 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). This includes considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting Harris, 510 U.S. at 23). In short, a plaintiff must show that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Smith*, 813 F.3d at 309 (quoting *Harris*, 510 U.S. at 21).

But the harassing conduct "must be extreme to amount to a change in the terms and conditions of employment." *Barrett*, 556 F.3d at 515 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Simple teasing, offhand comments, and isolated incidents (unless they are severe) do not amount to discriminatory changes in one's terms of employment. *Faragher*, 524 U.S. at 788. And Plaintiff must show that the work environment is both objectively and subjectively hostile—in other words, a reasonable person would have found it hostile or abusive, and the plaintiff actually perceived it to be hostile or abusive. *Smith*, 813 F.3d at 309 (citing *Harris*, 510 U.S. at 23). Otherwise, the harassing conduct did not alter the conditions of the plaintiff's employment, and the claim is not actionable under Title VII. Lastly, courts only consider harassment based on the plaintiff's sex when assessing the fourth prong of a hostile work environment claim. *Jefferson v. Fresenius Med. Care Holdings, Inc.*, No. 3:17-cv-00697, 2019 WL 4725194, at *14 (M.D. Tenn. Aug. 30, 2019) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)).

Judge Christoff cited many cases where the Sixth Circuit found that the plaintiff failed to show harassment severe or pervasive enough to satisfy the fourth prong of a hostile work environment claim. *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568–70 (6th Cir. 2021) (holding that five clear instances of sexual harassment involving plaintiff's breasts and appearance over fifteen months were not enough); *Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (holding that a "single battery coupled with two merely offensive remarks over a six-month period" were not enough); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 708, 715 (6th Cir. 2007) (holding that fifteen offensive utterances over two years were not severe or pervasive

enough); *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir. 2000) (holding that several inappropriate jokes, a verbal sexual advance, referring to the plaintiff as "Hot Lips," and talking about the plaintiff's clothing were not enough).

In that regard, some claims that involved "deplorable and offensive conduct" were not enough to satisfy the fourth prong. *Lovelace v. BP Prod. N. Am.*, 252 F. App'x 33, 41 (6th Cir. 2007). For example, in *Bowman v. Shawnee State University*, 220 F.3d 456, 464 (6th Cir. 2000), the Sixth Circuit found that three instances of physically invasive conduct, including the supervisor grabbing the plaintiff's buttocks while saying that "she controlled [the plaintiff's] ass and she would do whatever she wanted with it," plus repeated unwanted sexual advances, were not enough to prove severe or pervasive harassment.

In the R&R, Judge Christoff examined the five occasions on which Plaintiff alleges Mr. Paxton harassed her, finding that only the whistling incident[6] may have been based on Plaintiff's sex. (ECF No. 38 at PageID 364.) The others, Judge Christoff found, were not implicitly or explicitly related to her sex and therefore cannot be considered in assessing Plaintiff's hostile work environment claim.[7] (*Id.*)

---

[6] Plaintiff claims that Mr. Paxton "wolf-whistled" or "catcalled" at her as she walked away from his classroom, but he claims that he was whistling at a student who was dressed up for picture day. (ECF No. 38 at PageID 352.) As for the other incidents, Judge Christoff's R&R states, "Ford alleges that, even though Paxton was instructed to stay away from her, he continued to interact with her—once by trying to force her to take paper from his hands, once by telling her that he was removing student work from the wall outside her classroom, once by asking about a student, and once by poking his head into her classroom. Ford does not allege or prove how any of these interactions could be considered sexual in nature." (ECF No. 38 at PageID 364–65.)

[7] Judge Christoff also noted that Plaintiff "also identifie[d] acts by other SCBE employees she appears to allege to be discriminatory and to contribute to a hostile work environment, such as failing to sufficiently investigate her complaint about Paxton, failing to sufficiently discipline Paxton, and overloading her class with challenging students. Ford similarly fails to establish that any of these acts were based on Ford's sex; they appear relevant, if at all, to her claim of retaliation." (ECF No. 38 at PageID 365, n. 22 (internal citation omitted).)

But even if these interactions were based on Plaintiff's sex, and even if Mr. Paxton did whistle at Plaintiff, Judge Christoff found that Plaintiff's hostile work environment claim must fail because the conduct alleged does not rise to the level of severe or pervasive harassment recognized by the Sixth Circuit. (*Id.* at PageID 365.) The R&R concluded that, even assuming Mr. Paxton's conduct annoyed Plaintiff, "no reasonable person would consider that conduct sufficiently severe to create a hostile and abusive working environment." (*Id.*) For these reasons, Judge Christoff recommended that the Court grant summary judgment for Defendant on Plaintiff's hostile work environment claim. (*Id.*)

Plaintiff's objections largely focus on her claim that Defendant negligently failed to protect her from Mr. Paxton's behavior. But the Court need not consider whether Defendant failed to act promptly because Plaintiff failed to show that the alleged conduct created a hostile work environment. (*See* ECF No. 41 at PageID 393–95.)

First, Plaintiff provides no evidence that the alleged incidents, other than the whistling incident, were related to her sex. Plaintiff merely argues that she "reasonably perceived [the harassment] to be driven by Mr. Paxton's uncontrollable desires of sexual attraction to her." (*Id.* at PageID 393.) She also claims "[i]t was reasonable for her to perceive that Mr. Paxton's behavior was driven by sex, because he was unable to comply with what Ms. Ford believed to be [Defendant's] directed restrictions on Mr. Paxton for interacting with Ms. Ford." (*Id.*) For all that, Plaintiff provided no factual support for these conclusions. Plaintiff also offers no evidence to support her conclusion that he was "not in control of his sexual urges, or deemed it a challenge

in pursuing her."[8]  (*Id.*)  In the end, Plaintiff has not shown that the four incidents of alleged

harassment, besides the whistling incident, were based on sex.

Second, Plaintiff provides no evidence or caselaw that would contradict Judge Christoff's

finding that her interactions with Mr. Paxton were not severe or pervasive enough to create a

hostile work environment.  (ECF No. 41 at PageID 393.)  Even if Plaintiff subjectively perceived

the work environment to be hostile or abusive, she has not shown that a reasonable person would

perceive it that way, as is required to make a hostile work environment claim.  *See Smith*, 813

F.3d at 309 (citing *Harris*, 510 U.S. at 23).  And even if the four incidents besides the whistling

incident had been sexual, Plaintiff still cannot show that those incidents[9] were objectively severe

or pervasive enough to create a hostile work environment.  (*See* ECF No. 41 at PageID 377–78,

381–82, 386; ECF No. 38 at PageID 364–65.)

Judge Christoff put it well: "[t]hough [Plaintiff]'s interactions with Paxton may have

seemed annoying or even inappropriate to her, no reasonable person would consider that conduct

sufficiently severe to create a hostile and abusive working environment."  (*Id.* at PageID 365.)

In the end, simple teasing, offhand comments, and isolated incidents (unless they are severe) do

---

[8] Plaintiff also argues that she "reasonably perceived that her assertion that her workplace was
permeated with discriminating intimidation, and insult, sufficiently severe and pervasive was
reasonably perceived when seeing news and hearing radio reports [] involving the termination of
the SCBE Superintendent, who was terminated for his sexual harassment activities with other
SCBE employees.  In addition to having knowledge of Ray's affairs with unnamed women and
arranging three-way phone calls for them, reports cited SCBE employees who witnessed the
Superintendent fighting in the parking lots with spouses of the women with which he was
involved."  (ECF No. 41 at PageID 395.)  But the Court fails to see how allegations of sexual
misconduct against other persons, who are not accused of sexual harassment in this case,
supports Plaintiff's claim that Mr. Paxton's alleged harassment created a hostile work
environment for her.  So this argument is unpersuasive.

[9] These include Mr. Paxton forcing her to take paper from his hands, telling her that he was
removing student work from the wall outside her classroom, asking about a student, and poking
his head into her classroom.  (*See* ECF No. 41 at PageID 377–78, 381–82, 386; ECF No. 38 at
PageID 364–65.)

not amount to discriminatory changes in one's terms of employment.  *Faragher*, 524 U.S. at 788.
While some Sixth Circuit precedent like the *Bowman* case "may set the outer limits on what
conduct a reasonable person" would believe creates a hostile work environment, the conduct
Plaintiff alleges is well within that limit.  *Nathan*, 992 F.3d at 569.

All in all, Plaintiff's bare allegations of hostile work environment, without facts to
support them, are not enough to survive summary judgment: "rumors, conclusory allegations and
subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a
matter of law."  *Smith v. City of Toledo, Ohio*, 13 F.4th 508, 519 (6th Cir. 2021).  And "an
unsupported contention does not create a question of fact."  *Wright v. Murray Guard, Inc.*, 455
F.3d 702, 709 (6th Cir. 2006).  So after considering Sixth Circuit precedent and the totality of the
circumstances on the record de novo, the Court **ADOPTS** Judge Christoff's R&R on this point
and **GRANTS** summary judgment for Defendant on Plaintiff's hostile work environment claim.

## C.     Retaliation

To make a claim for Title VII retaliation, an employee must show that: (1) she engaged in
a protected activity; (2) the defendant knew about her protected activity; (3) the defendant took
an adverse employment action toward her; and (4) there was a causal connection between the
protected activity and the adverse employment action.  *Mickey v. Zeidler Tool & Die Co.*, 516
F.3d 516, 523 (6th Cir. 2008) (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381
(6th Cir. 2002)).  After considering each element, Judge Christoff found a genuine issue of
material fact as to whether Defendant removed Plaintiff as second grade team lead in retaliation
for her protected activity.  (ECF No. 38 at PageID 373.)  But Judge Christoff also concluded that
Plaintiff failed to show a genuine issue of material fact as to the other six incidents of alleged
retaliation.  (*Id.* at PageID 368–73.)

### 1.    Protected Activity

First, Judge Christoff found that Plaintiff engaged in a protected activity when she reported the whistling incident to Principal James on August 22, 2019, the day after it occurred. (*Id.* at PageID 366.)  Under Title VII, a protected activity includes opposing unlawful employment practices, and making a charge, testifying, assisting, or participating in any way in an investigation, proceeding, or hearing.  42 U.S.C § 2000e-3(a).  Protected activities are not limited to making formal EEOC charges.  *Mengelkamp v. Lake Metro. Housing Auth.*, 549 F. App'x 323, 331 (6th Cir. 2013) ("In a case founded upon the opposition clause, it is irrelevant that [EEOC] charges have not been filed.").  Complaining to management, unions, and other employees constitutes opposition and is therefore a protected activity under Title VII.[10]  *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)).

It is undisputed that Plaintiff complained about the whistling incident.  Still, Defendant objects to the R&R, arguing that Plaintiff did not engage in a protected activity because Plaintiff did not complain "close to and prior to May 5, 2021," when Principal James decided to remove her as second grade team lead (as explained below).  (ECF No. 42 at PageID 400.)  But whether Plaintiff's complaint was close in time to the alleged adverse employment action is irrelevant for determining whether she engaged in a protected activity in the first place.  The time between a plaintiff's protected activity and the alleged adverse action is instead relevant to the question of

---

[10] "When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)).

causality.[11]  So this Court agrees with Judge Christoff that Plaintiff engaged in a protected activity and **ADOPTS** Judge Christoff's R&R on this point.

### 2.      Defendant's Knowledge

Second, Judge Christoff found that Defendant knew about Plaintiff's complaint and therefore knew she engaged in a protected activity.  (*Id.* at PageID 367.)  There is no dispute that Principal James met with Plaintiff and investigated her complaints.  Therefore, this Court again agrees with Judge Christoff that Defendant knew about Plaintiff's protected activity and **ADOPTS** the R&R on this point.

### 3.      Adverse Employment Action

The next question is whether Plaintiff can show that Defendant took an adverse employment action against her.  "To show adverse action under a retaliation claim, the 'plaintiff must show that a reasonable employee would have found the challenged action materially adverse[,]' which would dissuade a reasonable worker from making or supporting a charge of discrimination."  *Kaminsky v. Wilkie*, 856 F. App'x 602, 607 (6th Cir. 2021) (citing *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  But "de minimis employment actions are not materially adverse for purposes of [retaliation]."  *Erwin v. Honda N. Am., Inc.*, No. 22-3823, 2023 WL 3035355, at *2 (6th Cir. Apr. 21, 2023) (citing *Bowman*, 220 F.3d at 462).  Judge Christoff found that Plaintiff alleged seven different adverse employment actions.

First, Plaintiff alleged that Defendant retaliated against her by failing to investigate her claims against Mr. Paxton fully, failing to discipline him sufficiently, and generally forcing her

---

[11] "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Montell v. Diversified Clinical Servs., Inc.,* 757 F.3d 497, 505 (6th Cir. 2014) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

to work with him.  (*Id.*)  But Judge Christoff found that the undisputed facts show that Defendant investigated Plaintiff's complaints and "took steps to correct Paxton's behavior."  (*Id.*)  Defendant met with Plaintiff to discuss her complaints at least two more times since her initial complaint about the whistling, where Plaintiff was able "to tell her side of the story, repeatedly and at length."  (*Id.* at PageID 368); *Bunt v. Clarksville Montgomery Cnty. Sch. Sys.*, No. 3:21-cv-00896, 2023 WL 6881786, at *20 (M.D. Tenn. Oct. 18, 2023).  And Defendant was "not required to accept as true [Plaintiff's] version of events or even to resolve the discrepancies between the varying versions of events."  *Id.*  All the same, it is undisputed that Principal James met with Mr. Paxton to discuss the incident and assigned a different music teacher to Plaintiff's class for the rest of the school year.  (*Id.* at PageID 352.)

In the end, Plaintiff failed to show that the investigation was "so obviously inadequate or dismissive" of her concerns "as to qualify as an adverse action."  *Blunt*, 2023 WL 6881786 *20 ("[T]he purported failures to investigate were not materially adverse, did not cause the plaintiff separate harm, and were not so objectively deficient that they would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'").  So this Court agrees with Judge Christoff that Plaintiff's inadequate investigation allegation cannot support her retaliation claim.  (*Id.* at PageID 368.)

Second, Plaintiff alleged that Defendant prevented her from participating in "Professional Development" and "Training Programs," referring to a summer reading program where teachers had the chance to earn $1,000.  (*Id.*; ECF No. 19 at PageID 85.)  But Judge Christoff found that the reason Plaintiff did not participate in that summer program is that she was at a doctor's appointment when the sign-up sheet circulated.  (ECF No. 38 at PageID 368.)  And Plaintiff

presented no evidence that Defendant intended to prevent her from signing up that day or that it otherwise denied her participation.  (*Id.*)

Plaintiff objects to Judge Christoff's finding by arguing that the opportunity should have been announced in advance so everyone could apply.  (ECF No. 41 at PageID 390.)  While Plaintiff may have preferred to know about that opportunity in advance, Defendant's failure to inform employees ahead of time is not a materially adverse action and Plaintiff has provided no evidence to the contrary.  This Court therefore agrees with Judge Christoff that Plaintiff cannot successfully claim that not being selected for the summer reading program was unlawful retaliation.

Third, Plaintiff alleged that Defendant retaliated against her by failing to hire her as a teacher during the summer.  (ECF No. 38 at PageID 369; ECF No. 19 at PageID 85.)  Because being denied a promotion or overtime can constitute an adverse action,[12] Judge Christoff found that a factual dispute existed about whether Defendant retaliated against Plaintiff by denying her application to teach in the summer.  (*See* ECF No. 41 at PageID 391; ECF No. 38 at PageID 369.)  The Court agrees and finds that Plaintiff met her burden to show a genuine dispute of fact about whether Defendant denying her the summer teaching opportunity constituted an adverse employment action.

Fourth, Plaintiff alleged that Defendant retaliated against her and violated its own rules by preventing her from having the union representative of her choice during a May 5, 2021, meeting.  (*See* ECF No. 19 at PageID 86; ECF No. 38 at PageID 369.)  But Judge Christoff

---

[12] *See Burlington N.*, 548 U.S. at 64; *Broska v. Henderson*, 70 F. App'x 262, 267–68 (6th Cir. 2003).  Judge Christoff noted that a denial of a summer teaching position is conceptually like a denial of a promotion or overtime because she applied for the chance to work more in exchange for more compensation but was not selected.  (ECF No. 38 at PageID 369.)  This Court agrees.

found that no facts supported Plaintiff's allegation. (ECF No. 38 at PageID 369.) Plaintiff objects that "Mr. Keith Williams, Executive Director, M-SCEA [the Memphis-Shelby County Education Association,] emailed Ms. Beard regarding the meeting held on May 5, 2021, where Ms. Beard denied [Plaintiff's] request to have Mr. Keith Williams . . . attend said meeting as my AR[, "Association Representative,"] support of my grievance, which violated [Defendant's] EEOC protocol(s) for processing grievances." (ECF No. 41 at PageID 392.)

But Plaintiff still provides no proof that Defendant denied her the choice of her representative, nor does she add proof of a policy requiring Defendant to grant her choice of representative. In her Statement of Material Facts in Dispute, Plaintiff cites a Memorandum of Understanding "between the School Board and the Memphis-Shelby County Education Association ("M-SCEA")" that states that "[a]n M-SCEA member has a right to be accompanied, represented and advised by [Association Representative] if the grievant so desires, to assist in the resolution of grievances . . . . representation may be by the grievant's Association Representative." (ECF No. 35 at PageID 313.) But nowhere in this Memorandum of Understanding does it *require* Defendant to provide the Representative of Plaintiff's choice—it merely states that she would have a right to be represented, and that it *may* be by her Association Representative. So this Court agrees with Judge Christoff that Plaintiff has failed to present a genuine dispute of material fact as to retaliation regarding her union representation.

Fifth, Plaintiff alleged that Defendant retaliated against her when it removed her from her role as second grade team lead in May 2021. (ECF No. 38 at PageID 369; ECF No. 19 at PageID 85–86.) Recall that a plaintiff must show that the challenged action was materially adverse to make a retaliation claim, meaning it could have dissuaded a reasonable worker from opposing discrimination. *Burlington N.*, 548 U.S. at 68 ("We speak of *material* adversity

because we believe it is important to separate significant from trivial harms.").  "Whether a particular reassignment [or other action] is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."  *Erwin*, 2023 WL 3035355, at *3 (quoting *Burlington N.*, 548 U.S. at 71).  In other words, the context matters—"[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."  *Burlington N.*, 548 U.S. at 69 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82) (For example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.").

After drawing all reasonable inferences in favor of Plaintiff, as is required at the motion for summary judgment stage, Judge Christoff found that Plaintiff showed a dispute of material fact over whether her removal as team lead was an adverse employment action.  (ECF No. 38 at PageID 370.)  Though being team lead did not include an increase in salary, the position came with more material responsibilities like lesson planning, coordinating duties among the teachers, and communicating with administration on behalf of the teachers.  (*Id.*)  And so, when Defendant removed her from this position, her material responsibilities were diminished, even if only for the few weeks remaining in the school year.[13]  (*Id.*)  And "[w]hether or not that diminishment was significant in the context of [Plaintiff's] employment is in dispute"—Plaintiff testified that the team lead position elevates one's status among other faculty members.[14]  (*Id.*)  Because

---

[13] A new team lead is selected at the start of every school year.  (ECF No. 38 at PageID 370.)

[14] Defendant argues that "[p]urely subjective injuries such as loss of reputation are not adverse actions," and that Plaintiff's removal did not "adversely change[] her employment status."  (ECF

removal as team lead could potentially "dissuade a reasonable worker from making or supporting a charge of discrimination," the Court agrees with Judge Christoff and finds that Plaintiff has shown a genuine dispute of material fact over whether her removal as team lead was an adverse action. *Kaminsky*, 856 F. App'x at 607.

Sixth, Ford alleged that Defendant retaliated against her by giving her a lower performance score in 2022 than she had ever received after her protected activity of reporting Mr. Paxton. (*Id.*; ECF No. 19 at PageID 86–87.) But the evidence shows that Plaintiff scored a 4.0 in 2019–20; a 4.42 in 2020–21; and a 4.28 in 2021–22. (*See* ECF No. 30-1 at PageID 212–24; ECF No. 38 at PageID 370.) And Plaintiff has produced no evidence to support her allegation that her removal as team lead affected these scores or that a slightly lower score would be materially adverse. Plaintiff has even admitted that her scores were largely consistent over these three years. (ECF No. 36 at PageID 319.) The Court therefore agrees with Judge Christoff that Plaintiff failed to show that the slight reduction in her performance score for school year 2021–22 amounted to an adverse employment action.

---

No. 42 at PageID 401 (citing *Hutchinson v. Holder*, 668 F. Supp. 2d 201, 215 (D.C. Cir. 2009)(citation omitted).) But Defendant's "subjective injury" proposition comes from *Hutchinson v. Holder*'s analysis of the plaintiff's discrimination claim, not its analysis of the plaintiff's retaliation claim. *See Hutchinson*, 668 F. Supp. 2d at 215. And what constitutes an adverse action for discrimination claims is different from retaliation claims—for retaliation, a plaintiff need not show that the challenged action affected the terms or conditions of her employment. *Burlington N.*, 548 U.S. at 69 ("Our holding today makes clear that the jury was not required to find that the challenged actions were related to the terms or conditions of employment.") All that matters is whether the action could dissuade a reasonable worker from making or supporting a charge of discrimination. *Hutchinson*, 668 F. Supp. 2d at 218; *see also Muldrow v. City of St. Louis, Mo.*, No. 22-193, 2024 WL 1642826, at *6 (U.S. Apr. 17, 2024) (clarifying Title VII's adverse employment action standard in discrimination claims and comparing it to the standard in retaliation claims). So applying the correct "materially adverse" standard here, the Court finds that Plaintiff has shown a genuine dispute of fact about whether being removed as team lead was materially adverse because the alleged change in her status after being removed plus her diminished material responsibilities may dissuade a reasonable worker from making or supporting a charge of discrimination.

Seventh, Plaintiff alleged that Defendant retaliated against her by "stacking" her class with a disproportionately high number of students that presented behavioral or other challenges and then failed to appropriately handle her grievance about the issue. (ECF No. 38 at PageID 371; ECF No. 19 at PageID 87–89.) But Judge Christoff found that Plaintiff has presented no evidence that her class had more high-need students compared to other classes. (ECF No. 38 at PageID 371.) Plaintiff objected to this finding, but still presented no such evidence. The Court therefore finds that Plaintiff has not presented a genuine dispute over whether Defendant "stacked" her classroom, and she cannot claim retaliation based on this allegation.

Lastly, Judge Christoff found that Plaintiff's retaliation claims "could collectively be read as asserting a claim of retaliatory hostile work environment." (*Id.*) That said, to make such a claim the plaintiff must show that the hostility is so severe or pervasive as to dissuade a reasonable worker from making or supporting a charge of discrimination. (*Id.*); *Ogbonna-McGruder v. Austin Peay St. Univ.*, No. 3:21-cv-00506, 2023 WL 3572891, at *14–15 (M.D. Tenn. May 19, 2023). And the Sixth Circuit requires courts to determine initially whether the hostility is severe or pervasive enough before deciding whether that hostile environment is materially adverse enough to be an adverse employment action. *Id.* at *16. For a retaliatory hostile work environment claim, the "plaintiff need not show that the hostility was based on her protected class, she need only show that the hostility was the result of retaliatory motive." *Id.* at *16 n. 21.

Judge Christoff found that Plaintiff failed to show that her work environment was severe or pervasive enough to support a retaliatory hostile work environment claim. And the Court agrees with Judge Christoff that Plaintiff's "interactions with Paxton do not suffice to establish severe harassment. Consideration of the additional circumstances that she was denied a summer

teaching position and was removed as team lead do not change that conclusion." (*Id.* at PageID 372.)  In the end, this Court echoes Judge Christoff: "[t]he undisputed facts in the record simply do not establish the type of severe and pervasive environment of hostility and harassment necessary, as a matter of law, to support a claim of retaliatory hostile work environment." (*Id.*) The Court therefore **ADOPTS** Judge Christoff's R&R on this point.

The Court will now consider whether Plaintiff can show a causal connection between her protected activity and the two surviving potential adverse employment actions: (1) her removal as team lead and (2) her denial of a summer teaching position.

### 4. Causality

To meet her prima facie burden for retaliation, Plaintiff must show a causal connection between her protected activity and her two potential adverse employment actions.  Temporal proximity alone may show a causal connection "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity," but when the timing is not as close, "the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."  *Montell*, 757 F.3d at 505; *see also Zarza ex rel. Zarza v. Bd. of Regents of Univ. of Mich.*, 2023 WL 3270899, at *4 (6th Cir. May 5, 2023) (quoting *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 588 (6th Cir. 2022)) ("To establish causality, plaintiffs often point to temporal proximity and some 'other evidence of retaliatory conduct.'").

When the Sixth Circuit has found that temporal proximity alone established a causal link, the time between the employer learning of the protected activity and the adverse employment action was quite short—less than six months.  *Compare McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x. 960, 965 (6th Cir. 2004) (holding that thirteen days was close enough on its own to show a prima facie case of retaliation), *and Shefferly v. Health All. Plan of Mich.*, 94

F. App'x. 275, 285 (6th Cir. 2004) (holding that less than three weeks was close enough), *and Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (holding that three months was close enough), *with Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272–73 (6th Cir. 1986) (holding that four months was too distant to make a prima facie showing of retaliation), *and Parnell v. West*, No. 95-2131, 1197 WL 271751, at *3 (6th Cir. May 21, 1997) (holding that seven months was too distant), *and Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that two years was too distant); *but see Brown v. ASD Computing Center*, 519 F. Supp. 1096, 1116–17 (holding that three months was too distant).

Turning to Defendant's removal of Plaintiff as second grade team lead, Judge Christoff found that a genuine dispute of material fact existed about whether there was a causal connection, and that Plaintiff therefore met her prima facie burden for retaliation. (*Id.*) Judge Christoff based her decision on her understanding that "[t]he decision [to remove Plaintiff as team lead] was made *during a meeting* regarding Ford's grievance, which included her complaints of a hostile work environment, and thus it was a decision contemporaneous with Ford's protected activity." (*Id.*) Respectfully, for the reasons below, this Court disagrees with that conclusion.

Defendant objects to Judge Christoff's finding by arguing that Principal James's decision to remove Plaintiff as team lead did *not* happen in the same meeting in which Plaintiff engaged in a protected activity. (ECF No. 42 at PageID 402–03.) In fact, the record shows that Principal James removed Plaintiff as team lead nearly two years *after* Plaintiff's protected activity. (*Id.*) Defendant points out that there is a typo in the grievance meeting notes from the May 5, 2021, meeting between Plaintiff and Principal James where James made the decision to remove Plaintiff as team lead—under "date of meeting" it says "6/5/2021." (*See* ECF No. 30-1 at

PageID 208–09.)   It is undisputed that this meeting took place on May 5, 2021, not June 5, 2021.[15]  This typo, therefore, may have caused confusion about the temporal proximity between Plaintiff's protected activity, Defendant learning of that activity, and the alleged adverse employment action of Plaintiff's removal as team lead.  The Court will now clarify the timeline.

Plaintiff's protected activity occurred on August 22, 2019, when she reported the whistling incident to Principal James.  (ECF No. 30-1 at PageID 206.)  Principal James learned of that protected activity when she received the complaint—the same day.  So Plaintiff must show a causal connection between August 22, 2019, and May 5, 2021, when she was removed as team lead.  The record does not show any instance before the May 5 meeting,[16] besides Plaintiff's initial complaint about Paxton, where Plaintiff engaged in protected activity.[17]

Temporal proximity plus other evidence of retaliatory conduct is enough to establish causality.  *Montell*, 757 F.3d at 505.  Although a plaintiff need only identify "'minimal' evidence to create that inference" of causality, Plaintiff has identified no independent evidence of retaliation.  *Zarza*, 2023 WL 3270899, at *4 (citation omitted); *see, e.g.*, *Harrison v. Metro. Gov't*, 80 F.3d 1107, 1119 (6th Cir. 1996), *overruled on other grounds as recognized by Jackson v. Quanex Corp.*, 191 F.3d 647, 667 n.6 (6th Cir. 1999) (holding that plaintiff proved causation

---

[15] The "Step 2" grievance meeting notes were reviewed by Sharonda Beard, Principal James's supervisor, and signed on 5/11/2021, indicating that the meeting took place before that date. "Step 3" meeting notes dated June 4, 2021, are directly beneath the "Step 2" notes, further indicating that the "Step 2" meeting took place on May 5, 2021.  (*See* ECF No. 30-1 at PageID 209.)  Neither party disputes that the "Step 2" meeting took place on May 5, 2021.  (*See* ECF No. 19 at PageID 86.)

[16] The next time that Plaintiff engaged in a protected activity, by complaining about Paxton's alleged sexual harassment, was in her next meeting on June 4, 2021, after she was removed. (ECF No. 30-1 at PageID 209.)

[17] Though Plaintiff filed an EEOC charge on July 28, 2021, which normally would constitute a protected activity, she cannot show that anyone at school knew about the charge, which is essential to meet her prima facie burden.  So her EEOC charge cannot support a claim of retaliation.  (ECF No. 38 at PageID 355, 366.)

24

when he filed a discrimination charge one year and three months before he was terminated and showed that his employer made "repeated comments that suggested he would not hesitate to run employees out," caused other employees who testified to fear retaliation, and took "every opportunity to make [plaintiff's] life . . . unpleasant."); *Montell*, 757 F.3d at 506 (holding that a jury could find that plaintiff's discharge was retaliatory when her boss called her soon after finding out about her sexual harassment complaint against him and told her to resign or be fired, and when her boss called someone else to tell them that plaintiff had resigned before she had actually done so); *Spengler*, 615 F.3d at 494 (holding that plaintiff produced enough evidence for a jury to find retaliation when plaintiff showed, among other things, that his supervisor's "attitude towards him noticeably changed" after plaintiff reported supervisor's behavior).

As a result, Plaintiff must show a causal connection using the timing alone.  About 18 months passed between her initial complaint about Mr. Paxton and Principal James's decision to remove her as team lead.  But 18 months is far too long to establish causality without any other evidence of retaliation.  *See, e.g.*, *Clark Cnty. Sch. Dist.*, 532 U.S. at 273 (holding that two years was too distant to establish causality).  And while Judge Christoff correctly points out that Principal James said during the meeting, "I just no longer want Ms. Ford to be team lead . . . I just don't," this comment within the context of the May 5 meeting is not other evidence of retaliation.  (ECF No. 38 at PageID 373.)

At the May 5 meeting, Plaintiff complained about: (1) teachers and staff entering her room and invading her space in violation of COVID-19 social distancing protocol, and (2) her perception that she was being ostracized by colleagues and administration for sharing her concerns.  (ECF No. 30-1 at PageID 208–09.)  The record shows that Plaintiff did not mention Mr. Paxton or her sexual harassment complaints.  (*Id.*)  This May meeting followed her earlier

complaints to Principal James that teachers were entering her classroom to deliver documents. (*Id.* at PageID 208.)  In this context then, nearly two years after Plaintiff's protected activity, Principal James's statement that she no longer wanted Plaintiff to be the team lead does not support an inference that James was motivated to remove Plaintiff because of her protected activity.  It seems more likely that James's comment stemmed from Plaintiff's social distancing concerns and her inability to lessen them.[18]

Because Plaintiff has no other evidence of retaliation and cannot create a causal connection from temporal proximity alone, she cannot meet her prima facie burden and cannot based a retaliation claim on her removal as team lead.

And finally, as for Defendant's failure to hire Plaintiff as a summer teacher, Judge Christoff found that Plaintiff could not show a causal connection.  (ECF No. 38 at PageID 373.) Plaintiff did not present evidence that the person who made the decision not to hire her for the summer knew of her protected activity.  (*Id.*)  "Her allegations and arguments are bare-bones in this regard—she merely asserts that she applied and was not hired for the summer position." (*Id.*)  And once again, she objects to Judge Christoff's finding but points to no other evidence supporting her allegation or showing a causal connection.  The Court therefore finds that Plaintiff cannot meet her prima facie burden of retaliation based on Defendant's failure to hire her as a summer teacher.

---

[18] Defendant agrees, arguing that even if Plaintiff could show a prima facie case of retaliation, Principal James had a legitimate nondiscriminatory reason for removing her as team lead: to address Plaintiff's COVID-19 concerns.  The Court need not address whether Defendant has shown a legitimate nondiscriminatory reason for removing Plaintiff as team lead because Plaintiff has not met her prima facie burden.  *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) ("If Plaintiff establishes a *prima facie* case, the burden of production shifts to Defendant to 'articulate some legitimate, nondiscriminatory reason for [its action].'").

Having conducted a de novo review, the Court finds that Plaintiff's retaliation claims fail because she cannot establish causality for either of her alleged adverse employment actions. The Court therefore **PARTIALLY ADOPTS** Judge Christoff's R&R and **GRANTS** summary judgment on Plaintiff's retaliation claims.

## II.        Plaintiff's THRA Claims

The analysis of claims under the THRA is the same as the analysis under Title VII. *See Cook v. Life Credit Union*, 138 F. Supp. 3d 981, 991 (M.D. Tenn. 2015) (quoting *Parker v. Warren Cnty. Util. Dist.,* 2 S.W.3d 170, 172–73 (Tenn. 1999) (internal quotations omitted)). Judge Christoff therefore recommended that summary judgment be granted as to all of Plaintiff's THRA claims. Having conducted a de novo review, the Court agrees with the R&R and **GRANTS** summary judgment to Defendant on Plaintiff's THRA claims.

**<u>CONCLUSION</u>**

For the reasons above, the Court finds that there are no genuine disputes of material fact and that Defendant is entitled to a judgment in its favor. The Court therefore **GRANTS** summary judgment for Defendant on all claims.

**SO ORDERED**, this 29th day of April, 2024.

 s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE